THE STATE v. TOM RICHARDS, Appellant.—67 S. W. (2d) 58.

Division Two, December 20, 1933.

486

*H. L. Moore, W. A. Franken* and *R. H. Moore* for appellant.

*Roy McKittrick,* Attorney-General, and *Powell B. McHaney,* Assistant Attorney-General, for respondent.

WESTHUES, C.—Appellant and Henry Wright were charged, by an information filed in the Circuit Court of Clay County, Missouri, with the crime of murder in the first degree. On an application for a change of venue the case was transferred to Carroll County. A severance was granted. Appellant's trial resulted in a conviction as charged and a punishment of life imprisonment was assessed. Appellant's motion for a new trial was overruled and sentence pronounced in accordance with the verdict. From this sentence appellant duly appealed.

On the night of March 7, 1932, or early morning of March 8, a number of men attempted to burglarize the Kearney Trust Company at Kearney, Clay County, Missouri. During the progress of the attempted burglary a man named Ernest Barr, a citizen of Kearney, was shot and killed by the culprits who were attempting to burglarize the bank.

At the trial appellant did not attempt to dispute the fact that there was an attempt made to burglarize the trust company or that Ernest Barr was shot and killed by someone participating in this crime. Neither was it disputed or questioned that the evidence was sufficient to show that the homicide constituted murder in the first degree. The sole contention of appellant was, and is, that this is a case of mistaken identity; that he, appellant, did not participate in the crime but was at his home in Excelsior Springs, Missouri, and had no connection whatever with the attempted burglary or murder.

There are fifty-seven assignments of error in the motion for new trial, covering thirty-two pages of the abstract of the record. Many of the assignments are duplications and we will not attempt to enumerate them, but will treat the various points properly preserved for our review. A number of the assignments pertain to the admission and rejection of evidence. It will, therefore, be necessary to detail some of the State's evidence.

A night watchman at Kearney, named Joe Thompson, testified to the following state of facts: On the night of March 7, Thompson was in a barber shop warming himself. While in the barber shop he noticed a car stop across the street near the Kearney Trust Company building. A man stepped from the car and apparently was engaged in examining the gas tank. When he saw Thompson, who had left the barber shop, he called to him and asked where he could get some gasoline. This man, according to Thompson's evidence, was the appellant. Thompson directed them to a filling station, where he attempted to unlock the station for the purpose of selling the men some gas. Just as he was about to unlock the door the man identified as appellant held a revolver against Thompson's body and said, "Stick em up." Then the codefendant, Wright, stepped from the car. The two men securely tied Thompson's hands, placed him in the car and then drove to the railroad station where a car was parked. A man from the parked car came to the car in which Thompson was being held and asked for a machine gun. When he saw Thompson he exclaimed, "Why in the hell haven't you got him blindfolded?" Thompson was then blindfolded, taken to the barber shop and tied in a chair. Thompson was asked for the keys to the bank building and denied having them. The man identified as appellant made the statement that they were going to burglarize the trust company. Thompson further testified that while he was being held a prisoner in the barber shop he managed to shift the blindfold sufficiently so as to permit him to see the men about him. He testified appellant kept watch over him and would go in and out of the barber shop. On several occasions Wright made visits to the barber shop. Thompson was thus held a prisoner for several hours. He had been in the habit of going home for lunch about midnight and when he did not appear at the appointed time his wife became worried and notified deceased, Barr. This was about two o'clock A. M. Barr dressed and went to look for Thompson. According to the evidence, Barr must have encountered the men attempting to burglarize the bank when he came near the barber shop which was across the street from the trust building. Immediately prior to the shooting appellant had left the barber shop. Thompson heard voices outside and then a number of shots in rapid succession. Thompson managed to free himself and took refuge in the rear of the barber shop. Barr received a number of gunshot wounds from which he died. Empty shells were found near the place of the shooting and a number of bullets were lodged in the walls of the buildings. These gave evidence that .38 caliber revolvers had been used. A .38 caliber police special was taken from Thompson by the perpetrators of the crime. The bank building had been entered and a hole burned in the vault.

A week following this homicide there was a trial in progress at Liberty, Missouri, wherein Henry Wright was being tried for the offense of carrying concealed weapons. This trial had no connection

with the present case except that Thompson had been requested by the prosecuting attorney to attend the trial and be on a look-out for the men who had attempted to burglarize the trust company at Kearney. Appellant was one of Wright's bondsmen and was present in the court room. Thompson informed the prosecuting attorney that Wright and appellant were the men he had seen at Kearney on the night of the homicide. Wright and appellant were arrested and lodged in jail. Immediately thereafter two search warrants were issued directing the officers to search the homes of Wright and appellant and seize certain stolen property believed to be concealed therein. The stolen property described in the search warrants was "one revolving pistol, .38 caliber police special," being a description of the pistol taken from Thompson the nightwatchman.

The officers made a search but did not find the revolver or pistol described in the search warrants. The officers did find, at the home of Wright, a money bag, a black rag and a .38 caliber revolver. At appellant's home the officers found a .32 caliber revolver in a sheep lined coat. All of this property was taken, by the officers, and at the trial the State was permitted to introduce it in evidence over the strenuous objections of the appellant.

Prior to the trial motions to suppress the evidence obtained by virtue of the search warrants, were filed. These were overruled. During the trial appellant renewed his objections to the evidence. One of the specific objections made at the trial to the evidence of the property found at the home of Wright was, "and for the additional reason that the objects found at the residence of Henry Wright are not evidence against Tom Richards." The point was properly preserved for our review in the motion for a new trial. The position of appellant is well taken. We will forego a discussion of the validity of the search warrant issued against the Wright home and also the motion to suppress the evidence taken in the search. Upon no theory of law was the property taken from the Wright home evidence against appellant. The record does not contain any testimony that appellant ever possessed or even saw any of the articles mentioned. It is argued that the evidence was admissible to prove a conspiracy. Evidence of statements made by one conspirator during the commission of a crime, or so near in point of time as to make it a part of the res gestae, is admissible against all participants in the crime. However, articles found on a person, other than the defendant on trial, long after the commission of the offense, are not admissible against the defendant minus a showing of some connection of the articles with the defendant. Suppose for argument's sake tools had been found in Wright's possession a week after the commission of the offense, which were admitted to have been used in the attempted burglary. How would the introduction of these articles aid in the identification of the defendant Richards, or tend to prove his connection with the commission of the offense? It was not

disputed in this case that a crime had been committed and that all persons connected therewith were chargeable with murder. The principal disputed issue was the identification of appellant. The State wholly failed to show any connection between the articles found at the Wright home and appellant. The evidence was, therefore, inadmissible for any purpose against this appellant. The theory relied upon by the State can be best illustrated by the following excerpt from State v. Ruck, 92 S. W. l. c. 711, 194 Mo. 416:

"Again, under this same head, defendant assigns as error the admission of the testimony showing that when McLespy, Gettings, and Ryan were arrested by the police, a few moments after the assault, the officers found on their persons, and in their pockets, bottles. As to this, we think there can be no doubt whatever as to the propriety of this evidence. The evidence, already in, tended to prove that these three men were present and taking part in the assault upon the prosecuting witness, and the defendant had assaulted him with a bottle. These three were arrested a few moments afterwards in their flight, and it was perfectly competent to show that they were armed with the same character of weapons as that with which the assault had been committed. The fact that they were thus armed was strongly corroborative of the statement of the prosecuting witness to the officers, of the character of the assault that had been made upon him, and was admissible also for the purpose of identifying them as the parties who had been engaged in the assault." [See, also, State v. Reich, 239 S. W. l. c. 837 (9), 293 Mo. 415.]

Had appellant and Wright been arrested while fleeing from the scene of the homicide and Wright had had the articles in his possession they would have been admissible in evidence against appellant. Appellant and Wright were not seen together on the day or near the time the offense was committed except that the witness Thompson identified Wright and appellant as the men who participated in the offense on the night in question.

The State maintains that even though the articles and the evidence with reference thereto were erroneously admitted, the error was harmless, especially so in view of Instruction No. G given at appellant's request. It reads:

"You are instructed that the .38 caliber revolver, money sack and rag claimed to have been found at the residence of Henry Wright can only be considered by you as evidence that Henry Wright was in a conspiracy to commit the attempted burglary at Kearney and for no other purpose."

The night watchman was permitted to testify to the effect that on the night in question Wright's forehead was covered with a black rag similar to the one found at Wright's home. An officer of the bank testified that the trust company and other banks and customers used money bags similar to the one found in Wright's home. This, and the evidence of the finding of number .38 empty

494

shells and number .38 bullets in a wall near where deceased was shot was as near as the State approached to connecting the articles with the commission of the offense. Wright was not on trial in this case. We are not in a position to say that the admission of this evidence was harmless. Error should not be declared harmless unless it is so without question. Appellant offered substantial evidence of an alibi. He strenuously denied his guilt. The night watchman did not claim he had ever seen appellant prior to the night of the homicide. Identification of appellant and his connection with the crime charged with the sharp dispute in the case. Under the circumstances we hold the admission of the evidence with reference to the articles found at the Wright home as well as the admission in evidence of the articles, to be reversible error. ■ The trial court also erred in admitting the evidence introduced over appellant's objection that the factory number on the .38 caliber revolver found at Wright's home had been obliterated. There was so much of this evidence introduced with reference to the finding of these articles that we hold the instruction did not cure the error.

■. The State introduced in evidence, over appellant's objection, the .32 caliber revolver found in the home of appellant. This is assigned as error. Appellant filed a motion to suppress the evidence obtained in the search under the search warrant and to return the property to appellant. Objection was also made to the introduction of this evidence at the trial. Appellant has duly preserved these questions for our review. [State v. Owens, 259 S. W. 100, 302 Mo. 348.] It is admitted by the State that the property taken by the officers was not the property described in the warrant. It is also admitted that the property offered in evidence was taken from the home of appellant. Appellant was not there at the time, as he had previously been arrested at the courthouse and lodged in jail. So far as the record discloses the revolver and the sheep skin coat taken were the private property of appellant. It was not contraband and its possession was not unlawful *per se*. The motion to suppress the evidence should, therefore, have been sustained and the property returned to appellant. The objection made at the trial to the admission in evidence of the articles found and the evidence with reference to the search should also have been sustained. [State v. Randazzo, 318 Mo. l. c. 764, 765, 300 S. W. l. c. 757 (2, 3); State v. Owens, supra.] The search warrant described a certain revolver as the stolen property to be seized under the warrant. Such a search warrant did not authorize the officer to seize property not contraband and, therefore, the search and seizure of the property in question was not authorized. This rule is supported by numerous authorities. [56 C. J., p. 1244, sec. 164; Marron v. United States, 275 U. S. 192, 72 L. Ed. 231; United States v. Siegel, 60 Fed. (2d) 136; People v. Preuss, 225 Mich. 115, 195 N. W. 684; Cofer v. State, 152 Miss. 761, 118 So. 613.]

The above rules are limited to the evidence obtained by virtue of the search warrants and the evidence pertaining thereto. The trial court did not err in permitting the night watchman to testify fully as to what he saw and heard on the night in question. Nor did the court err in admitting the evidence with reference to the finding of empty shells and the finding of bullets lodged in the walls.

Appellant objected to the method of cross-examination, by State's attorney, of witness Story. Story was appellant's principal alibi witness. He had testified in the trial of Wright the week previous. The bill of exceptions reveals that the State's attorney engaged in a long argument with the witness over certain evidence, and the meaning thereof, given at the trial of Wright. Suffice to say that trial courts should not permit arguments of this nature. [Pyle v. Kansas City Light & Power Co., 246 S. W. l. c. 987 (14, 15); State ex rel. v. Stanton, 296 S. W. l. c. 191 (2); Loeb v. Kimmerle, 9 Pac. (2d) l. c. 204 (10); Humphreys v. City of San Francisco, 268 Pac. l. c. 395 (13); Pouncey v. State, 136 So. l. c. 742 (7).] They serve no useful purpose in a case. A witness may be impeached by showing that he testified to a different state of facts at a former trial. [40 Cyc. 2708.] To do this he may be asked if he so testified. If he denies he did, the former testimony may be introduced. It then becomes the duty of the jury to say when the witness told the truth.

Error is assigned to the action of the trial court in permitting the prosecuting attorney to read to the jury the information including the verification. The information is nothing more than a formal charge against the defendant. The prosecuting attorney is required, under the statute, to make a statement of the State's case to the jury. [Sec. 3681, R. S. 1929, Mo. Stat. Ann., p. 3227; State v. Loeb, 190 S. W. 299.] The reading of the information to some extent may be a duplication of that statement. An instruction generally given in all criminal cases informs the jury that the information or indictment is a mere formal charge and must not be considered by them as any evidence against the defendant. The reading of the information to a jury cannot, therefore, be considered as prejudicial to a defendant. The verification or affidavit of the prosecuting attorney ought not to be read to the jury. The only purpose of reading the verification could be to impress upon the jury that the prosecuting officer had sworn to the facts stated in the information and that would be improper.

Appellant was named in the information and instructions as "Tom Richards alias Tom Young." The evidence discloses that this reference to appellant was unauthorized. On a retrial all reference to an alias should be omitted.

Instruction No. 4 is assailed. It is similar to one approved in State v. Williams, 274 S. W. l. c. 434, 309 Mo. 155. The latter part of the instruction in the case before us reads as follows:

"That while in pursuance and execution of said common purpose (if you find there was a common purpose), that the said TOM RICH-

ARDS, *alias* TOM YOUNG, *or any of the others engaged in the pursuance and execution of such common purpose (if you find there was a common purpose)* at the County of Clay and State of Missouri, aforesaid, on March 8, 1932, did feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, if so. shoot with a pistol and by such shooting killed ERNEST BARR. or was then, and there present. aiding. abetting or assisting. or was present for the purpose of aiding, abetting or assisting others. or another. in the commission of such crime, then you will find TOM RICHARDS, *alias* TOM YOUNG, guilty. . . .''

The clause italicized is not found in the instruction approved in State v. Williams, supra. It is contended that this instruction. as written, authorized the jury to convict the appellant if they found that he *or any one of the others* was present aiding, etc. The State's theory, which was supported by substantial evidence, was that appellant either shot deceased or was present aiding and abetting in the commission of the offense. There was no evidence introduced authorizing a conviction of appellant if he was not present at the commission of the crime. The instruction. as written. would have been proper if there had been evidence of appellant's connection with the crime other than his actual presence and participation therein. If the italicized clause had been omitted from the instruction it would have clearly and correctly submitted the State's theory to the jury. The instruction as given may be interpreted as appellant contends. On a retrial the clause under discussion should be omitted.

 In the motion for a new trial appellant contended there was no substantial evidence to support the verdict. This point was not briefed and we find no merit therein. The identification of appellant and the evidence of his connection with the crime were sufficient to support the verdict of the jury. On the point of identification see State v. Hart, 331 Mo. 650. 56 S. W. (2d) 1. c. 594 (8) ; State v. Scobie, 331 Mo. 217, 53 S. W. (2d) 1. c. 251 (3) ; State v. Blackmore, 327 Mo. 708, 38 S. W. (2d) 1. c. 34 (1, 2).

 Another assignment of error. in the motion for new trial not briefed deserves comment. The State offered in evidence certain school attendance records showing appellant's daughter had attended school on a certain day. This was offered for the purpose of contradicting the testimony of appellant who had testified his daughter had not attended school on that day. The objection was made that the witness who produced the records and testified with reference thereto did not make the records or see them made and was not the custodian thereof. Upon a retrial these objections should be met. Note the testimony of the witness:

''Q. You didn't see these records kept, did you? A. They are the property of the teachers to keep during the year.

''Q. Certainly, and all you know about it is that Mr. Smith handed you these? A. Yes, sir.

"Q. You didn't have anything to do with keeping these particular records? A. No, sir.

"Q. Nor didn't see the teachers make them? A. No, sir."

Other assignments of error in the motion for new trial, not briefed, have been examined and found to be without merit.

The judgment of the circuit court is reversed and the cause remanded for a new trial. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.