STATE of Missouri, Respondent,

v.

Norman Oscar RILEY, Appellant.

No. 43816.

Supreme Court of Missouri.

Division No. 2.

Sept. 13, 1954.

Charles M. Shaw, Wayne C. Smith, Jr., Clayton, for appellant.

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

LEEDY, Judge.

Norman Oscar Riley was tried in the Circuit Court of St. Louis County under an information charging him with murder in the first degree in having shot and killed his wife, Winifred, in that county on the 8th day of June, 1952. The jury found him guilty of manslaughter, and fixed his punishment at eight years' imprisonment in the penitentiary. Judgment and sentence went accordingly, and this appeal followed.

The narrow scope of the review sought makes it unnecessary to make a detailed statement of the facts. Defendant, a colored man, was 39 years of age at the time of the homicide; he lived with his wife and four children at 557 Lafayette Street, Webster Groves; he was employed by the U. S. Government as a painter at St. Louis Medical Depot; he also worked three nights a week as a musician at a night club in East St. Louis, Illinois. The homicide occurred between 5:30 and 6 A.M., June 8, 1952 (shortly after defendant had returned home from his work at the night club), as the culmination of a quarrel with his wife as to whether she would permit him to get in bed with her. The commotion was such as to awaken three of their children (Christopher, aged 16; James, aged 14; and Charles, age not shown) who were sleeping in another room. Christopher intervened and struck his father in the back of the head with a soda bottle when the latter, poised with broom handle in upraised hand, was about to strike the boy's mother. Defendant, testifying in his own behalf, did not recall whether he had struck his wife at the time the boy hit him with the pop bottle, but stated that he chased the boys out of the house, and, returning to a cabinet in the bedroom, procured the pistol with which he fired the fatal shot. His defense was that the gun discharged accidentally.

742

■ Two points are relied on for reversal. One has to do with evidence, and the other an instruction. Those grounds of the motion for a new trial on which the evidence point is based are much narrower than the range the brief has taken. The former control, of course, and so consideration in this court will be restricted to those complaints specified in the motion for a new trial, the first of which is that prejudicial error was committed "in permitting the state over the objection of defendant's counsel to have marked for identification, in view of the jury and introduced in evidence, two pistols other than the one allegedly causing the death" in question. The reason assigned in support of such charge was that "the only possible purpose of the prosecuting attorney marking these other pistols for identification in view of the jury was to arouse passion and prejudice in the minds of the jury and to inflame them against the defendant." The other assignment of the motion relating to the evidence question charges error "in permitting the prosecuting attorney to exhibit to the jury, over the objections of the defendant, certain pocket knives." It is apparent that neither assignment purports to be directed against the admissibility of oral testimony given in relation to the guns or knives. These offending incidents occurred in the course of the direct examination of state's witness Youngman, one of the arresting officers, who arrived on the scene almost immediately after the shooting. Exhibit "B", a 44-caliber Smith & Wesson revolver, was identified by the witness as being the pistol he found in an overstuffed chair near the bed on which the woman was then and there lying. He also identified two other exhibits as being guns which were, in the presence of the witness, removed by defendant's sons from a metal cabinet in the room just mentioned, and by them delivered to the witness upon the latter's return to defendant's residence about an hour after the shooting. These guns, together with a bag (which, it is inferable, contained the pocket knives of which the motion for new trial complains) were marked for identification as exhibits, and this without objection on defendant's part. The court indicated to counsel out of the hearing of the jury that the articles mentioned would be received in evidence. It was then stipulated that "Exhibit 'B' is the gun that was found on a chair, and the property of the defendant, Norman Riley." It is now urged, in effect, that this stipulation foreclosed any further inquiry about, or reference to, other weapons found in the same room; but, as previously noticed, this is broader than the assignments of the motion for new trial. The facts stipulated, as shown above, were not tantamount to an admission that Exhibit "B" was the gun *with which the fatal injuries were inflicted;* nor does the language of the stipulation comprehend or include the showing sought by the state to be made by inference that defendant obtained the weapon from the cabinet or wardrobe in which the several revolvers and knives in question were admittedly kept by him. It is to be borne in mind that defendant had not then testified, and the state was entitled to show, if it could, the elements of deliberation, premeditation and malice, the charge on which he was then on trial being that of murder in the first degree. While it is not entirely clear because the opening statement referred to in the following excerpts has not been preserved, it was apparently the view of the trial court that this proof would go to the elements just mentioned. Witness this language: "I think, in view of the opening statement, and if he is able to prove the things that he indicated in his opening statement, that it would be relevant and admissible, not because they are guns, but because they may indicate where the gun that is alleged to have been used in this shooting was kept. * * * They may show an interval of time between the original argument and the fact that he went to this wardrobe—if that is where he kept the gun—to get a gun. If these guns were kept in that wardrobe, it is some evidence and perhaps will corroborate other evidence that the gun allegedly used in the shooting also came from that wardrobe; that is the reason for my ruling on the opening statement. I am going to permit them to be introduced."

The record affirmatively shows that this ruling was made at the judge's bench in the presence of only the attorneys, and out of the hearing of the jury. It was at this particular juncture that the questioned articles were marked for identification. However, they were not then or at any time thereafter offered in evidence, nor, for aught that appears, were they displayed before the jury other than as necessarily incident to the process of being marked as exhibits. The articles then passed out of the case, so to speak, and, insofar as we are able to determine, were not later referred to. Consequently, these facts do not present a violation of the rule rendering inadmissible evidence of the finding of weapons not shown to be connected with the crime, 40 C.J.S., Homicide, § 249, as contended by defendant. The three cases he relies on are: State v. Richards, 334 Mo. 485, 67 S.W.2d 58; State v. Saale, 308 Mo. 573, 274 S.W. 393; State v. Brown, 188 Mo. 451, 87 S.W. 519. The Richards case involved articles improperly seized under a search warrant. It was held the defendant's motion to suppress should have been sustained, and that it was reversible error to admit such articles in evidence. In State v. Saale, a woman was prosecuted for assault with intent to kill committed upon her husband who had been struck over the head two or three times with a club, and thrown into a well. It was held that although the crime was not committed with such a weapon, it was not error for the state to show by the wife's paramour-accomplice that a certain pistol was one given to him by defendant soon after her husband had been taken from the well, this on the theory that it was an incriminating circumstance tending to show defendant's guilt of the crime charged. In the Brown case, the defendant's prior, separate and distinct assault upon a third person was permitted to be shown, and on appeal to this court, this evidence was deemed reversible error. We find these cases to be not in point. The defendant has failed to show prejudicial error resulted from the circumstances complained of, and so the assignment is ruled against him.

 The other point is that the court erred in giving instruction No. 5 "because said instruction fails to define the law of accidental homicide." The state contends this question was not raised by the motion for new trial, and hence not open to review—a point of view to which we must accede. The motion's only reference to error based on instructions given by the court is the following: "12. That the court erred and committed prejudicial error in giving each and every instruction at the request of the state and over the objection of defendant." Obviously, this is too general to preserve anything for review under Section 547.030 RSMo 1949, V.A.M.S. State v. Harmon, Mo., 243 S.W.2d 326, 332.

We have examined the record proper, and find it regular and sufficient.

Judgment affirmed.

DEW and STONE, Special Judges, concur.