STATE of Missouri, Plaintiff-Respondent,

v.

Dexter DAVIS, Defendant-Appellant.

No. 36696.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Oct. 14, 1975.

On Rehearing Nov. 18, 1975.

Charles D. Kitchin, Public Defender, Joseph W. Warzycki, James C. Jones, Asst. Public Defenders, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston Dean and Timothy J. Verhagen, Asst. Attys. Gen., Jefferson City, for respondent.

NORWIN D. HOUSER, Special Judge.

Convicted by a jury of robbery in the first degree with a dangerous and deadly weapon and sentenced to the department of corrections for twenty years, Dexter Davis has appealed.

Appellant suggests reversible error in admitting in evidence Exhibit No. 1, a sawed-off shotgun. Appellant argues that Exhibit No. 1 proved no issue in the case, was highly prejudicial, not sufficiently identified, not found in the possession or under the dominion or control of appellant recently or when discovered five days after the robbery, and not relevant and material because not shown to have been used in the commission of the robbery. This argument has substance and requires reversal of the judgment of conviction.

In *State v. Richards,* 334 Mo. 485, 67 S.W.2d 58 (1933), a first degree murder case in which the victim was killed by pistol shots, officers conducting a search of codefendant Wright's home a week after the homicide found several articles including a pistol, which was introduced in evidence in Richards' trial over objection. The Supreme Court reversed, noting that the record did not contain any testimony that Richards ever possessed or even saw any of the articles found, stating l. c. 60 that "[u]pon no theory of law was the property taken from the Wright home evidence against [Richards]"; that " * * * articles found on a person other than the defendant on trial, long after the commission of the offense, are not admissible against the defendant minus a showing of some connection of the articles with the defendant. * * * The state wholly failed to show any connection between the articles found at the Wright home and appellant. The evidence was therefore inadmissible for any purpose against this appellant. * * * *" It is a general rule that "weapons and objects not connected with the defendant or the crime are not admissible unless they possess some probative value." *State v. Wynne,* 353 Mo. 276, 182 S.W.2d 294, 299 (1944). In reversing a murder conviction for error in admitting a pistol in evidence not shown to have been connected with defendant or his crime the Supreme Court in *Wynne* commented on the "natural tendency to infer from the mere production of any material object, and without further evidence, the truth of all that is predicated of it"; and the fact that " * *· * the sight of deadly weapons * * * tends to overwhelm reason and to associate the accused with the atrocity without sufficient evidence" (4 Wigmore, Evidence, § 1157, p. 254). The Supreme Court concluded that the inherent nature of the lethal weapon (an automatic pistol) "was such, under the circumstances of this case, that the jury would undoubtedly have a tendency to infer from a demonstration with it 'the truth of all that is predicated of it' when in fact it had nothing whatever to do with the defendant or the crime." 182 S.W.2d l. c. 300[9]. The *Richards* and *Wynne* cases have been repeatedly cited with approval by the appellate courts of this State. Another persuasive case is *State v. Smith,* 357 Mo. 467, 209 S.W.2d 138 (1948), a burglary and larceny case in which it was held error to receive in evidence two pistols found in the purse of defendant's wife at the time defendant was arrested (there the pistols actually belonged to the defendant) where there was no claim that defendant used the pistols in the commission of the crimes; or that his wife was a party to the burglary and larceny, or that the pistols had any connection with the offenses. The court said, l. c. 142[7]: "That the introduction in evidence, before this mixed jury, of these lethal weapons, under the circumstances, was erroneous and prejudicial is self-evident."

Exhibit No. 1 was found five days after the robbery, not at the home of appellant but at the home of two brothers, Ricky and James Jones, who lived at 1400 East Prairie Street in St. Louis. Officers watching an auto parked in that block observed four young black males (later identified as Ricky Jones, James Jones, Ernest Murphy and Dexter Davis) enter that automobile. They were observed by the officers walking down the sidewalk on East Prairie, near Von Puhl Street, and they "came from the house on that block." The automobile drove away, with James Jones driving and appellant a passenger in the back seat. The police car followed, turned on lights and siren in attempt to halt the vehicle. Instead the automobile increased its speed, and a 12-block high-speed chase ensued. When the automobile was finally brought to a halt the four were arrested and later placed in a lineup. Mrs. Steghaus, an employee at the Western Auto Store which was robbed, positively identified Dexter Davis and Ernest Murphy as two of the three participants in the Western Auto Store robbery.[1] Later that day or the next day the officers searched the home of the Jones brothers, where they found Exhibit No. 1 under the mattress in a back bedroom. Exhibit No. 1 was not identified as the shotgun used in the robbery. No connection between Exhibit No. 1 and the crime was shown. The witnesses testified that it was similar, or looked like, the shotgun used on that occasion. No connection between Dexter Davis and the Jones house on East Prairie Street was shown. He lived elsewhere. It was not shown that Ernest Murphy lived at the Jones residence. It was not shown that Dexter Davis possessed Exhibit No. 1, either before or after his arrest, or that he ever had knowledge of its existence. The record does not connect either of the Jones brothers with the Western Auto Store robbery; neither Ricky nor James Jones was shown to have been Dexter Davis' "criminal associates" in the commission of that crime, so as to give rise to a claim that Exhibit No. 1 was admissible under the rule quoted in *State v. Cuckovich*, 485 S.W.2d 16, 23 (Mo. banc 1972), that a weapon found in the possession of the criminal associates of an accused which is similar to the weapon used at the crime, or which under the circumstances justifies an inference of the possibility of its having been used, is admissible for the purpose of showing availability to accused of the means of committing the crime. Nor is the admission of Exhibit No. 1 in evidence to be condoned on the basis of *State v. Underwood*, 470 S.W.2d 485 (Mo.1971), cert. den. 405 U.S. 928, 92 S.Ct. 980, 30 L.Ed.2d 802. In *Underwood* the pistol *actually used by defendant* was put in evidence; the proof of defendant's guilt was strong, and the identification of the other man (in whose possession the pistol in question was found) as the brother of the defendant came in without objection. The circumstances which impelled the Supreme Court to hold nonprejudicial the admission in evidence of the pistol found on Underwood's brother are not present here. The shotgun used in the Western Auto Store robbery was not produced and put in evidence at this trial. While the State made a submissible case it was not an especially strong case. The store manager, present at the robbery, could not identify appellant as one of the participants. He could not "say for sure." The men in the lineup "looked similar" to the robbers but he would not swear to their identity.

Recapitulating, Exhibit No. 1 was not connected with the crime. It was not found in the possession of appellant or his criminal associates, or under circumstances justifying an inference of the likelihood or possibility of its having been available to appellant for use in the robbery, or that it was otherwise connected with appellant. It was found five days after the robbery at a place

---

1. Ernest Murphy subsequently plead guilty to a charge of armed robbery of the Western Auto Store.

far removed from the robbery, in the home of persons who so far as this record shows had nothing whatever to do with the robbery. This lethal weapon, with its potential for unduly impressing the jury, was not admissible in evidence under the decided cases. The error in admitting Exhibit No. 1 in evidence "should not be declared harmless unless it is so without question." *State v. Degraffenreid*, 477 S.W.2d 57, 64[14] (Mo. banc 1972). The record does not demonstrate that the error did not prejudice appellant, *State v. Wynne*, supra, 182 S.W.2d l. c. 300, and therefore the judgment of conviction must be reversed.

Appellant raises two other points, which may arise on retrial and therefore should be considered.

The first of these points relates to the overruling of appellant's motion to suppress identification testimony on the ground that the procedures at the pretrial identification confrontation were so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of constitutional due process of law. Appellant stresses the following factors mentioned in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), as pertinent in applying the totality of circumstances test: that the four men in the lineup were not of the same approximate height or weight, but were all different, from which appellant argues that he was the only individual who could possibly be identified by the complaining witness as the guilty party; that a lineup composed of dissimilar people can lead "to the only conclusion possible, that the defendant was a participant in the robbery"; and that defendant "could easily be chosen by a process of elimination." Frances Steghaus, the identifying witness, testified at the hearing of the motion to suppress that she was called to police headquarters to view a lineup, conducted five days after the robbery; that the police officers said nothing to her on the way to headquarters or at the police station, except that the purpose of the trip was to view a lineup. At the voir dire hearing she testified that the four men in the lineup were not the same approximate height or weight, but were all different; that she then and there identified two of the four as participants in the robbery; that she viewed the lineup a matter of seconds before making her choice. Before the jury she modified this testimony, stating that while the four men were not of the "exact same description" they were "of the same general description, roughly the same age and so on." She identified the third man in the lineup (this appellant) as the man with the shotgun at the robbery and said that when he was in the lineup his hair style was a medium Afro. She did not recall whether he had a beard or moustache in the lineup. Asked whether he had any distinguishing features about his face or person she commented on his small, piercing eyes as "outstanding things." Three times she stated there was no doubt in her mind that this man was present at the robbery.

Mrs. Steghaus also made an in-court identification of appellant as the participant in the robbery who held the gun. She testified that the person who held the shotgun had his hair in corn rolls (braids) with three of them sticking up in front; that he was wearing a yellow and red-striped shirt, no hat, and was in his late teens. She estimated his height at maybe five-nine and his weight 160–165. She had an opportunity to observe him for maybe ten seconds at a distance of about eight feet. He had no covering over his face. She could see his face clearly. Officers testified that when the three men learned they were to be placed in a lineup they unbraided their corn rolls and put up their hair in Afro style.

■ We find no fault with the pretrial identification. Considering the totality of the circumstances there was no substantial likelihood of misidentification. At the scene of the crime the identifying witness' attention was attracted to the man with the shotgun for 10 seconds at a short distance. She had ample opportunity to observe him. His face was not covered and was seen

clearly by her. The description she gave the police, while inaccurate on height, was otherwise accurate. Her quick and certain identification at the confrontation inspires confidence in the accuracy of her identification. The lineup was conducted on the heels of the robbery, only five days later. The police made no suggestive comments prior to her identification of appellant at the lineup. The standards referred to in *Simmons,* supra, were not violated. There was substantial compliance with the factors mentioned in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Blevins,* 421 S.W.2d 263 (Mo.1967), and *State v. Hudson,* 508 S.W.2d 707 (Mo.App. 1974), sufficient to validate the pretrial identification.

■ Finally, Mrs. Steghaus' in-court identification, based upon a source independent of the lineup procedure, overcomes appellant's claim that the lineup violated appellant's due process right to fairness. *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *State v. Jackson,* 477 S.W.2d 47, 51 (Mo.1972); *State v. Walters,* 457 S.W.2d 817, 822 (Mo.1970); *State v. Hudson,* supra.

There was no error in overruling the motion to suppress and in admitting in evidence the testimony identifying appellant as one of the robbers.

■ The other point is appellant's claim that it was error to admit in evidence testimony that during the police chase a package was thrown out of the window of the lead automobile; that the police car stopped momentarily and one of the officers alighted and retrieved a paper bag. Appellant claims this evidence is irrelevant to the issue of his guilt and created in the minds of the jurors a presumption that appellant was guilty of committing another (unspecified) serious crime, to the prejudice of appellant. There was no evidence of the contents of the paper bag. Flight is admissible as evidence of consciousness of guilt and the circumstances surrounding flight are admissible. The circumstances surrounding an arrest are likewise ordinarily admissible in evidence. On this record we find no error in the court's ruling. Whether the tossing out of the paper bag and its retrieval by the officer were matters relevant to flight and arrest was a matter of judicial discretion and the trial court's exercise of discretion admitting this evidence will not be disturbed unless appellant can make a clear and convincing demonstration that its admission will prejudice the rights of the accused.

For the reason given the judgment of conviction is reversed and the cause is remanded for a new trial.

SMITH, C. J., and STOCKARD, Special Judge, concur.

### ON MOTION FOR REHEARING OR TO TRANSFER

PER CURIAM.

The State filed a motion for rehearing or to transfer to the Supreme Court, citing *State v. Cuckovich,* 485 S.W.2d 16 (Mo. banc 1972), and the Court's quotation at page 23 from 22A C.J.S. Criminal Law § 712, p. 966. This case and Cuckovich are disparate. The quotation is inapropos. In *Cuckovich* the revolver was taken from a dresser in the room at the time defendant was arrested. It was clearly connected with the defendant. It was of the same caliber as the revolved used in the killings. The bullets taken from the bodies and test bullets fired from the gun in evidence had the same general characteristics and some points of individual characteristics. This weapon was not found in the possession of Dexter Davis, or in the house where he lived. There is no showing of identity of caliber; no test shots were fired; no showing that the men accompanying defendant when he entered the automobile were his "criminal associates," see above quotation, 485 S.W.2d l. c. 23, or his "coconspirators," as in *State v. Richetti,* 342 Mo. 1015, 119 S.W.2d 330, 340 (1938); no showing that either defendant or the men actually came from the

house in which the gun was later discovered. This is a case like *State v. Wynne,* 353 Mo. 276, 182 S.W.2d 294 (1944), which Judge Holman differentiated in *Cuckovich* on the ground that the gun "was not shown to have been connected either with the defendant or the offense." 485 S.W.2d l. c. 23.

The State also disputes our finding that the case against defendant was not "especially strong," arguing that it was as strong as it could be and that the statement in *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972), should be applied, namely, that error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong. That this case was not "as strong as could be" and had inherent weaknesses, for instance, that the store manager himself was unable to identify the defendant as a participant in the robbery, was pointed out in the opinion.

The motion for rehearing or to transfer to the Supreme Court is overruled.