**STATE of Missouri, Plaintiff-Respondent,**

v.

**Richard Glenn PRUITT, Defendant-Appellant.**

**No. 37837.**

Missouri Court of Appeals, St. Louis District, Division One.

Aug. 23, 1977.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Charles D. Sindel, Asst. Circuit Atty., St. Louis, for defendant-appellant.

Schainker & Stern, Howard Schainker, Clayton, for plaintiff-respondent.

DOWD, Judge.

Richard Glenn Pruitt appeals from his conviction for the crime of carrying a concealed weapon. § 564.610 RSMo 1969.

At appellant's trial, Officer Mansell testified for the state. Officer Mansell testified that he initially stopped the truck driven by appellant after observing the truck run a red light. As he pursued the truck, Officer Mansell observed the two occupants of the truck bending over and slumping in the truck before the vehicle stopped. After the truck stopped, Officer Mansell left his patrol car, walked to the truck, and informed the occupants the reason they had been stopped. As he looked inside the truck, Officer Mansell could see 2 "ski masks", 2 pairs of rubber gloves, and an unspent shotgun shell on the front seat of the truck. Officer Mansell did not arrest the occupants of the truck but directed the two men to sit in his patrol car. After other police officers arrived, Officer Mansell looked under the front seat of the truck and found a 12-gauge shotgun loaded with one unspent shell.

Mr. Burkett, the owner of the truck, testified for appellant and stated that he had lent appellant his truck and that the shotgun was his. He testified that the shotgun was under the seat of the truck when he lent the truck to appellant but that the gun was not loaded at that time. He testified that the "ski masks" in the truck were his, but the rubber gloves and shotgun shells did not belong to him.

Appellant first contends that the shotgun, 2 "ski masks", 2 pairs of rubber gloves, and 2 unspent shotgun shells (the shotgun shell found on the seat of the truck and the shell found in the shotgun) were obtained as a result of an illegal search and seizure and that the trial court erred in overruling appellant's motion to suppress such evidence.

■ Three requirements must be met in order to preserve appellant's contention for appellate review. The defendant must object to the admission of the evidence in a motion to suppress, must keep the issue alive by a timely objection to the introduction of the evidence at trial, and preserve the error in his motion for a new trial. *State v. Taylor*, 538 S.W.2d 761, 764[1] (Mo. App.1976); *State v. Yowell*, 513 S.W.2d 397, 402[1, 2] (Mo. banc 1974). At trial, appellant failed to object to the introduction of the shotgun on the ground that it had been illegally seized, and appellant's contention in this regard is not preserved.

■ Although preserved, appellant's contention in regard to the "ski masks", rubber gloves, and shotgun shells is without merit. The 2 "ski masks", 2 pairs of rubber gloves, and one shotgun shell found on the seat of the vehicle driven by appellant were not obtained as the result of an illegal search and seizure because these items were properly seized under the "plain view doctrine." *State v. Achter*, 512 S.W.2d 894 (Mo.App.1974). The shotgun shell seized with the shotgun found under the seat of the truck was the product of a search made with probable cause. The discovery of bullets in the possession of the defendant together with the defendant's suspicious

movements in trying to conceal something under the seat of an automobile supply probable cause to search the vehicle for weapons. *State v. Cromwell*, 509 S.W.2d 144, 146–47[5] (Mo.App.1974); *see State v. Whitnah*, 493 S.W.2d 32, 35[1] (Mo.App. 1973). Here, Officer Mansell had observed the occupants of the truck bending over and slumping before the truck stopped and had seen a shotgun shell on the seat of the car. Appellant's motion to suppress evidence was properly overruled.

■■■ Appellant's second contention is the trial court erred in refusing appellant's request for a mistrial because the jury verdict was not responsive to the information or the evidence. Appellant's contention is based upon the fact that, through a clerical error, appellant's given name was noted as "Robert Glenn" rather than "Richard Glenn" on the verdict form. A verdict is not to be tested by technical rules of construction. *State v. Shumate*, 516 S.W.2d 297, 302[13] (Mo.App.1974). The verdict is sufficient if it authorizes entry of such a judgment as to bar further prosecution for the same offense. *State v. Shumate, supra* at 303[18]; *State v. Lewis*, 526 S.W.2d 49, 54[7] (Mo.App.1975). In the instant case, it is clear that the jury intended to render its verdict against the appellant, despite the misnomer in the caption of the verdict form. There has been no allegation that appellant was not the person named in the information or present before the jury at trial. Appellant was not prejudiced by the mistake in the verdict form. *See State v. Fennewald*, 339 S.W.2d 769, 774[5] (Mo. 1960). Appellant's point is without merit. *See State v. Puchbauer*, 299 S.W. 821, 824[13] (Mo.App.1927).

Appellant's third contention is the trial court erred in admitting into evidence the "ski masks", rubber gloves, and shotgun shells (found on the seat of the truck and in the shotgun) because this evidence was "irrelevant, immaterial, prejudicial, inflamma-

tory and allowed the jury to improperly speculate or infer that said items were instruments of uncharged criminal acts." We disagree.

■■■ The demonstrative evidence of which appellant complains was relevant upon the issue of intent.[1] One necessary element of the crime of carrying a concealed weapon is that the accused *intentionally* carry the weapon concealed on or about his person so as to not be readily discernible. *State v. Jordan*, 495 S.W.2d 717, 720[5] (Mo.App.1973). Although the requisite intent may be inferred from the act of carrying the weapon, *State v. Jordan, supra* at 720[7], the state is not precluded from presenting other probative evidence of intent. In the instant case, appellant's defense was that he did not know the shotgun was in the truck, that he lacked the requisite intent for the crime. Introduction of the 2 masks, 2 pairs of gloves, and shotgun shell found on the seat of the vehicle is circumstantial evidence that the 2 people in the truck knew of the presence of the shotgun under the seat of the vehicle. We believe that the jury could correlate the 2 pairs of gloves and 2 masks found in the presence of the 2 occupants of the truck with the shotgun shell found on the seat of the truck to infer that the two occupants knew of the presence of the loaded shotgun.

■■■ In addition, we do not believe that any prejudicial or inflammatory impact of this evidence outweighed its probative value. Although introduction of this evidence would allow the jury to draw an inference that appellant had engaged in uncharged criminal acts, evidence of other crimes is admissible to prove appellant's intent pertaining to the crime charged. *State v. Cole*, 527 S.W.2d 646, 650[3, 4] (Mo.App.1976); *State v. Whitley*, 512 S.W.2d 840, 842[3] (Mo.App.1974). If the jury believed that the gloves, masks, and shotgun shells were

---

1. Evidence is relevant if it tends to prove or disprove a fact in issue or to corroborate other evidence which is relevant and which bears upon a principal issue. *State v. Bolden*, 525 S.W.2d 625, 633[11] (Mo.App.1975). If the rel-

evancy of the evidence is questionable, the evidence should be presented to the trier of fact for evaluation. *State v. Sanderson*, 528 S.W.2d 527, 531[7, 8] (Mo.App.1975).

the implements of uncharged criminal acts, this inference could be considered by the jury to prove that appellant intended to carry and conceal another "implement" of the uncharged crime, the shotgun.

 Appellant's final contention is the trial court committed "plain error" in allowing the prosecutor to comment upon the ski masks, gloves, and shotgun shells in closing argument to the jury.[2] Appellant argues that the prosecutor's remarks were prejudicial and inflammatory and were made to create an inference that appellant had engaged in criminal acts beyond the scope of the trial.

We do not agree that the trial court committed "plain error" in permitting the prosecutor to refer to the "ski masks", gloves, and shotgun shells. The prosecutor's argument did not refer to uncharged criminal acts. The prosecutor's argument merely referred to evidence properly before the jury in order to argue that the two people in the truck knew of the presence of the shotgun. It is not "plain error" for the prosecutor to make reference to evidence before the jury. *State v. Lee*, 521 S.W.2d 180, 182[2] (Mo.App.1975).

2. Appellant complains of two separate references to the masks, gloves, and shotgun shells in the prosecutor's arguments to the jury. The first reference is as follows:

> "[Prosecutor]: . . . How can we show intent? How can we show what is in the defendant's mind? There is no way we can actually get into his mind and find out what he was thinking at the time. All we can do is look at the circumstances and the fact involved in a particular case, and what are the facts in this case?
>
> Two pairs of gloves laying on the front seat, a shotgun shell on the front seat, two ski masks, both laying on the front seat, two people in the automobile, two pairs of gloves, two people, two masks.
>
> \* \* \* \* \* \*
>
> We can't go into that man's mind to see that man's intent, but you can draw on your own experience, ladies and gentlemen, and in so doing it is reasonable to conclude that he knew about this shotgun underneath the seat."

The second reference is as follows:

Finding no error, the judgment is affirmed.

CLEMENS, P. J., and SMITH, J., concur.

> "[Prosecutor]: Mr. Schainker [defense counsel] used the words 'common sense.' Let's apply common sense. Let's assume for the moment that Mr. Burkett, when he testified, told you the truth . . ., and he never, never carried this gun loaded in his car. And he said when he loaned that truck that gun was not loaded . . . . .
>
> What do we have? One shell on the front seat. One shell laying on the front seat, and we have one shell . . . in . . . . this 12-gauge shotgun.
>
> How did this shell get in there?
>
> \* \* \* \* \* \*
>
> Mr. Schainker would ask you to believe— now it's loaded.—he [Burkett] doesn't know anything about the two pairs of gloves. Let's couple that with the fact that there are two pairs of gloves in the car. Let's couple that—we are using common sense—two ski masks in the car, two people in the car, ski masks,—ski hats, if you will . . . . . . It doesn't make any difference what you call them. I don't have to spell this out, ladies and gentlemen. All the evidence that you need is right here."