STATE of Missouri,
Plaintiff-Respondent,

v.

Lorenzo MURPHY, Defendant-Appellant.

No. 41873.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 16, 1980.

Karl F. Lang, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., S. Francis Baldwin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

Appellant was found guilty by a jury of the offense of carrying a concealed weapon, § 564.610, RSMo 1969, and sentenced to three years' imprisonment. He appeals from his conviction, arguing: (1) the evidence does not sustain his conviction; (2) irrelevant and prejudicial evidence was admitted at trial; and (3) one of the jurors should have been stricken for cause due to the juror's bias and prejudice. There was no error. The judgment is affirmed.

Appellant was arrested by an off-duty policeman performing security duties in the Cochran Garden Apartments, a St. Louis Housing Authority building project. While the policeman was checking a building sometime after 2:40 a. m., he entered a stairwell to check the upper floors. As he went up the stairs, the police officer saw appellant and his brother standing on the third floor landing watching him. The policeman noticed both appellant and his brother were wearing jackets and had their right hands in or near their right front jacket pockets. The officer testified he saw no weapons but was wary because of the hour and the circumstances.

The officer passed the appellant and his brother, careful to watch their right arms, and proceeded to the fourth floor. After he assured himself the men on the third floor landing had not followed, the policeman moved his service revolver, badge, and identification to more readily accessible positions and went down the stairs to approach and question appellant and his brother.

Appellant and his brother had proceeded down the stairs, and the officer followed them down to the lobby level.

As appellant and his brother reached the lobby level, the policeman called to them to stop, and identified himself as a police officer. Appellant was closer to the officer than appellant's brother. When the officer called, appellant made a quarter turn and looked back toward the officer. The officer, who was watching appellant's right hand which was still in his pocket, saw the brown handle of an as yet unidentified firearm. He testified that this was the first time he had seen the weapon.

The policeman immediately exhibited his revolver and police identification and ordered appellant to raise his arms. The officer removed a .357-magnum pistol from appellant's right jacket pocket. The police officer then approached appellant's brother. The officer removed a .38-caliber revolver from the right jacket pocket of appellant's brother. Further search of appellant and his brother produced ammunition and a flak jacket worn by appellant's brother under his jacket.

Appellant's first point relied on is that the trial court erred in denying appellant's motion for judgment of acquittal because insufficient evidence was adduced at trial to prove the gun carried by appellant was concealed. Although appellant's point relied on does not so specify, appellant's brief notes the evidence disproved that the .357-magnum pistol seized from appellant was concealed upon his person because the pistol was too large to be concealed inside appellant's jacket pocket and because the police officer who arrested appellant saw and immediately recognized the pistol protruding from appellant's pocket and did not have to search appellant to discover the pistol. Appellant's contention is not meritorious.

 Whether a weapon is concealed within the prohibition of § 564.610, RSMo 1969, is determined by whether the weapon is discernible by ordinary observation. A weapon is not concealed simply because it is not discernible from a single vantage point if it is clearly discernible from other posi-

tions. The weapon may be concealed, however, if it is discernible only from one particular vantage point. State v. Wood, 562 S.W.2d 699, 701[1–3] (Mo.App.1978); State v. Cavin, 555 S.W.2d 653, 654[1, 2] (Mo.App. 1977). Appellant's motion for acquittal was grounded upon the allegation that the state failed to prove the essential element of concealment. The scope of appellate review of the trial court's denial of that motion extends only to a determination of whether there is sufficient substantial evidence to support the verdict. In testing the sufficiency of the evidence, the evidence and reasonable inferences therefrom must be considered in the light most favorable to the state, and all contrary evidence and inferences must be disregarded. State v. Achter, 514 S.W.2d 825, 826[1, 2] (Mo.App. 1974).

Sufficient substantial evidence does support the verdict against appellant. The off-duty police officer who arrested appellant testified he did not see appellant's weapon except for a brief moment as appellant turned back toward him, although the officer had the opportunity to see the appellant from several other angles and had been particularly observant of appellant's right arm and hand. A police officer's testimony that he did not see a pistol despite the opportunity to view the accused under conditions likely to cause a police officer to be particularly observant for weapons is entitled to some consideration both at the trial and appellate levels. State v. Cavin, supra, 654[3]; State v. Odzark, 532 S.W.2d 45, 49[4–7] (Mo.App.1976); State v. Jones, 523 S.W.2d 152, 154[3] (Mo.App.1975). Appellant has urged that the .357-magnum revolver which he carried was too large to be concealed in his jacket pocket. However, if the revolver were partially concealed by the jacket pocket and partially concealed by appellant's arm and hand, that would be sufficient. State v. Miles, 124 Mo.App. 283, 101 S.W. 671 (1907) cited with approval in State v. Gibbs, 600 S.W.2d 594, 597 (Mo. App.1980). See State v. Achter, supra, 828. At trial, appellant put on his jacket and demonstrated how the .357-magnum revolv-

er would appear when in his jacket pocket and how his arms would be held. The jury evidently believed it was possible for the appellant's revolver to be concealed.

Appellant's second point relied on is that the trial court erred in admitting evidence of a bullet-proof, or flak, jacket worn by appellant's brother at the time of the arrest. Appellant argues the jacket was irrelevant, immaterial, prejudicial, inflammatory, and its admission deprived him of a fair trial. Appellant's contention is ruled against him.

■ Demonstrative evidence which tends to establish any fact in issue or throw light on the controversy and aid the jury in any way in arriving at a correct verdict is admissible although the evidence tends to arouse the prejudice of the jury. *State v. Murphy*, 592 S.W.2d, 727, 730[1, 2] (Mo.banc 1979); *State v. Swenson*, 551 S.W.2d 917, 921[14, 15] (Mo.App.1977). The only discretion a trial court has to deny admission of demonstrative evidence is if the evidence is both irrelevant to a material issue and also inflammatory or prejudicial. *State v. Swenson, supra.* Appellant argues the flak jacket was irrelevant because the jacket was neither worn by appellant nor pertinent to the question whether appellant carried a concealed weapon and argues the admission of the jacket was prejudicial because it "could raise all sorts of speculation and questions in the mind of the jury."

■ Weapons and objects not connected with the defendant or the crime are not admissible unless they possess some probative value. *State v. Hughes*, 596 S.W.2d 723, 727–728[7–9] (Mo.banc 1980); *State v. Duncan*, 540 S.W.2d 130, 136[12–16] (Mo. App.1976); *State v. Johnson*, 539 S.W.2d 493, 515[45, 46] (Mo.App.1976), *cert. denied* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). The connection of demonstrative evidence to the accused or the crime charged may be so remote as to make the evidence inadmissible. *State v. Richards*, 334 Mo. 485, 67 S.W.2d 58, 60[1] (1933). Analysis of the case law suggests evidentiary remoteness consists of seizure of evidence not connected with the defendant or the crime at a time remote from the date of the crime and the defendant's non-presence at the time of seizure. *State v. Richards, supra; State v. Davis*, 530 S.W.2d 709 (Mo. App.1975).

Nevertheless, demonstrative evidence may be relevant and admissible although the evidence was neither possessed by the accused nor strictly pertinent to the crime charged if the evidence is part of a continuous occurrence intimately connected with the crime. *State v. Swenson, supra,* 921[16].

Factors such as proximity of the time of seizure of the challenged evidence to the time the crime is committed, proximity of the challenged evidence to other admissible evidence seized with the evidence challenged, and proximity of the accused to the evidence at the time of seizure are pertinent to the decision whether evidence not seized from the accused, nor utilized in the crime charged, has sufficient connection with the crime to permit admission. *See State v. Johnson, supra,* 515–516[47–49].

The evidence challenged by appellant is not so remote as to prohibit admission of the evidence. The evidence was seized in appellant's presence and at the time of the commission of the crime and appellant's arrest.

The flak jacket also has probative value. Articles tending to show the accused's motive, malice, intent, knowledge, or preparation may be received in evidence if shown to be sufficiently connected with the crime or the accused. *State v. Johnson, supra,* 516[50]. The state has argued before both the trial and appellate courts that the flak jacket tends to show appellant's intent to conceal, an issue energetically contested by appellant. The state reasons that the fact appellant's brother was wearing a flak jacket is part of a scenario not indicative of appellant's innocent intent.

■ Even if the probative value of demonstrative evidence is questionable, the evidence should be admitted and presented to the trier of fact for evaluation. *State v. Pruitt*, 556 S.W.2d 63, 66 n. 1 (Mo.App.

1977). The trial court has broad discretion to determine the relevancy and admissibility of demonstrative evidence. *State v. Johnson, supra*, 515[45, 46]. The trial court was within its discretion in finding the challenged evidence of the flak jacket relevant to appellant's intent and admissible. *State v. Pruitt, supra*, 66[8–12]; *See State v. Williams*, 542 S.W.2d 3, 5[1, 2] (Mo.App.1976); *State v. Williams*, 539 S.W.2d 530 (Mo.App. 1976).[1]

Of the cases cited by appellant in support of his position that the flak jacket was inadmissible, the case most favorable to appellant's position is *State v. Holbert*, 416 S.W.2d 129 (Mo.1967). It held the admission of two weapons,[2] other than the weapon which the defendant was charged with concealing, constituted reversible error. *State v. Holbert, supra*. The court rejected the state's contention the evidence tended to prove the defendant's intent to conceal the weapon in the crime charged. *State v. Holbert, supra*, 132–133[7].

Another case which would lend support to appellant's argument but not cited by appellant is *State v. Williams*, 543 S.W.2d 563 (Mo.App.1976). That decision held a weapon concealed under the front seat of an automobile was not admissible in the defendant's prosecution for carrying a concealed weapon seized from appellant as he sat in the rear seat of the automobile. The court noted the state had advanced no particular ground of relevance of the disputed evidence but had merely contended the weapon was evidence concerning the circumstances of the offense charged and the defendant's arrest. *State v. Williams, supra*, 564.

Although *State v. Holbert*, 416 S.W.2d 129 (Mo.1967) and *State v. Williams*, 543 S.W.2d 563 (Mo.App.1976) appear to lend some support to appellant's argument, they are distinguishable from appellant's case in two important respects. First, unlike the cited cases, appellant challenges the admission of evidence which is not a deadly weapon.[3] Admission of demonstrative evidence not consisting of a deadly weapon does not have the same propensity to engender prejudice as admission of a deadly weapon. *State v. Johnson, supra*.[4] Second, unlike *State v. Holbert, supra*, and *State v. Williams*, 543 S.W.2d 563 (Mo.App.1976), appellant has strenuously contested the issue of his concealment of the weapon seized from him both at the trial and appellate levels. The question of defendant's concealment of the weapon forming the basis of charges in *State v. Holbert, supra*, and *State v. Williams, supra*, was not a viable issue. The court noted that the intent to conceal is presumed from the fact of concealment in rejecting the state's argument that the disputed evidence was admissible to prove the defendant's intent to conceal in *State v. Holbert, supra*; and the court noted the

---

1. The appellate court concluded admission of marijuana and marijuana paraphernalia (a pipe) into evidence was relevant to prove the accused's intent in a prosecution for possession of heroin. *State v. Williams*, 539 S.W.2d 530 (Mo.App.1976). Similarly, the admission of heroin and syringes is relevant to prove intent in a prosecution for possession of marijuana. *State v. Williams*, 542 S.W.2d 3, 5[1, 2] (Mo. App.1976).

2. One weapon was concealed near the defendant in his automobile. The other weapon was on the defendant's person. *State v. Holbert*, 416 S.W.2d 129 (Mo.1967).

3. *State v. Merritt*, 460 S.W.2d 591 (Mo.1970) and *State v. Wynne*, 353 Mo. 276, 182 S.W.2d 294 (1944), also cited by appellant involved admissions of deadly weapons. *State v. Merritt* and *State v. Wynne* are also distinguishable from appellant's case in that the erroneously admitted evidence was not seized in the proximity of defendant or close in time to the charged criminal activity. *State v. Merritt* (weapon allegedly found day after charged assault outside tavern which was the scene of the charged assault); *State v. Wynne* (weapon recovered from murder scene lost and state substituted allegedly similar weapon for demonstrative purposes).

4. Admission of three black berets and a black hat found inside drawers and seized from house which was not defendant's residence was not error because, although defendant was not identified as having worn such a hat during the murders, assaults, and robberies charged, at least one of the participants in the robbery wore a beret-like hat. *State v. Johnson*, 539 S.W.2d 493 (Mo.App.1976), cert. denied 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977).

state had advanced no specific theory of relevancy of the challenged evidence in *State v. Williams, supra.* However, in the case to be decided, the issue of appellant's concealment of the weapon was very much a contested and viable issue. *State v. Richardson*, 515 S.W.2d 571 (Mo.1974). Certainly in such a posture, and given the state's burden of proving its case beyond a reasonable doubt, the state should not be unduly limited in the quantum of its proof of concealment. *State v. Burks*, 484 S.W.2d 302, 306[5] (Mo.1972); *State v. Pruitt, supra*, 66[8–12].

Appellant's third and final point relied on is that the trial court erred by not striking a venireman from the jury panel for cause. Appellant argues the venireman's responses to voir dire questions revealed the venireman's bias and prejudice. Appellant's contention is ruled against him.

Appellant argues the venireman's bias and prejudice can be derived from the following questioning:

"MR. LANG [Appellant's attorney]: Have any of you had any close friends or relatives or maybe even yourselves at one time served as a police officer? Maybe not as a police reserve officer as Mr. Swiderski, but maybe you've had some connection with law enforcement and that would apply to any of you ladies and gentlemen of the jury box or somebody close to you is a police officer and see how relevant it is because only one witness for the State is with this case and he's a police officer.

Mrs. Sauer?

VENIREMEN [Sic] SAUER: Yes? Several friends.

MR. LANG: All right. Were any of them in the Third District?

VENIREMEN [Sic] SAUER: I don't believe so.

MR. LANG: Okay. Would you give more weight to the testimony of the police officer in this case because of your friendship and—

VENIREMEN [Sic] SAUER: I don't think so.

MR. LANG: Would you judge the testimony of this officer as the testimony of any other witness?

VENIREMEN [Sic] SAUER: Yes.

MR. LANG: In light of your own—In light of your own experience and intelligence you could do that?

VENIREMEN [Sic] SAUER: (The veniremen [sic] nodded her head.)

MR. LANG: Incidentally, you manage a tavern. Where is that tavern?

VENIREMEN [Sic] SAUER: On South Broadway.

MR. LANG: Okay. Have you ever been the victim of a crime down there where you had to call—

VENIREMEN [Sic] SAUER: We were robbed but not held-up like you said with a gun. We have been robbed several times.

MR. LANG: You mean burglarized?

VENIREMEN [Sic] SAUER: Burglarized.

MR. LANG: Robbery is someone taking—

VENIREMEN [Sic] SAUER: Okay.

MR. LANG: —by force either with a gun or knife or with a gesture that threatens you.

VENIREMEN [Sic] SAUER: Not like that.

MR. LANG: You haven't been the victim of any robbery but while you were gone?

VENIREMEN [Sic] SAUER: Yes.

MR. LANG: While you were gone. Are you apprehensive about being the victim of a robbery?

VENIREMEN [Sic] SAUER: Very unhappy.

MR. LANG: Would that feeling that you have and you have to have a feeling if you're open late at night in a tavern because taverns are an easy target for the people that want to rob—

VENIREMEN [Sic] SAUER: Very apprehensive.

MR. LANG: —would that apprehension tend to effect [sic] you at all in deliberation of this case where this man is

charged with carrying a concealed weapon?

VENIREMEN [Sic] SAUER: I hope not.

MR. LANG: Pardon?

VENIREMEN [Sic] SAUER: I hope not.

MR. LANG: Hope not either, that's

VENIREMEN [Sic] SAUER: I don't know.

MR. LANG: That's why I'm asking the question.

VENIREMEN [Sic] SAUER: I don't think so.

MR. LANG: Because I have to be sure. I have to be sure that you have no reservations about it, you see, and can you tell me unqualified, without reservation that your apprehension wouldn't effect [sic] you at all in this case? Maybe you don't know, maybe if you're not sure—

VENIREMEN [Sic] SAUER: I guess I can't answer that because I don't really know.

MR. LANG: Well, you can't say then— look at it the other way and I don't want people to think I'm picking on you because I know that someone who's working late nights, say at a filling station or any of them if they read the papers they have to figure they may in the future be a target and may be apprehensive and particularly women like yourself managing this.

Would it be fair to say that you can't positively say that it wouldn't effect [sic] you and—

VENIREMEN [Sic] SAUER: It would be very safe."

Appellant's attorney then requested the trial court to strike the venireman for cause during a conference at the bench. The court indicated it did not believe it was necessary to strike the venireman for cause, but continued to question the venireman as follows:

"THE COURT: Mrs. Sauer, I'm asking you in view of the fact that you do operate a tavern at night and you've indicated the fact that you have had some burglaries there that have occurred whether or not you could be fair to the State and the defendant and you were asked questions by Mr. Lang about how you felt.

No-one knows exactly how you're going to respond to anything but do you have any reservations in your own mind, any reluctance to feel that you could be fair to the State and to the defendant?

VENIREMEN [Sic] SAUER: It's reluctance, yes.

THE COURT: That you couldn't be fair to one side or the other?

VENIREMEN [Sic] SAUER: Yes.

THE COURT: Could you follow the Court's instructions?

VENIREMEN [Sic] SAUER: I could do that, yes, sir.

THE COURT: And could you then judge the case on the basis of what is said here in the courtroom and not what happened at your tavern and not what happened to anybody else but only and solely on what happens in the courtroom?

VENIREMEN [Sic] SAUER: Yes, I guess I could.

THE COURT: And doing that then could you be fair to both sides, putting aside anything at all what happened in your own life and what happened to other people or what happens outside of the courtroom? We want the jury to make the decision whatever it is based on the evidence that's received in the courtroom because that's the basis on which you return a verdict, not on what happened to you in the years gone by or what you do or what happened to your family but what happened here in this case as evidence [sic] by the testimony and the exhibits?

VENIREMEN [Sic] SAUER: Yes, I could.

THE COURT: Could you do that now?

VENIREMEN [Sic] SAUER: Yes, I could.

THE COURT: All right. You can join me again unless either one of you want to ask a question.

MR. LANG: Well, you indicated that you felt that your apprehension, what

would happen to you would effect [sic] your ability to listen to the facts. I thought you mentioned this, it might— you couldn't be sure whether it would effect [sic] you in your deliberations?

VENIREMEN [Sic] SAUER: Well, he just said I'd have to block that out. I could do that.

MR. LANG: Well, you think you can block it out?

VENIREMEN [Sic] SAUER: Yes.

MR. LANG: No question about it?

VENIREMEN [Sic] SAUER: No.

THE COURT: All right, your objection will stand but I'll overrule it."

■ The defendant in a criminal jury trial is entitled to a full panel of qualified impartial veniremen before he is required to exercise his peremptory challenges. *State v. Roberts*, 604 S.W.2d 765, 767[1–3] (Mo.App.1980). The trial court determines, in the first instance, whether a prospective juror is qualified; and, in making this determination, the trial court has broad discretion which will not be disturbed on appeal unless the trial court's determination is clearly against the evidence and constitutes a clear abuse of discretion. *State v. Thomas*, 596 S.W.2d 409, 412–413[6, 7] (Mo. banc 1980); *State v. Treadway*, 558 S.W.2d 646, 649[1, 2] (Mo.banc 1977), *disapproved on other grounds in Sours v. State*, 593 S.W.2d 208 (Mo.banc 1980); *State v. Goodrich*, 603 S.W.2d 81, 83[1] (Mo.App.1980). In making the determination whether the venireman is qualified, the court must consider the facts stated by the venireman and not the venireman's conclusions that he could be fair and impartial, *State v. Roberts, supra*, 767[6, 7], and must consider, not a part, but the whole of what the venireman says during the examination. *State v. Treadway, supra*, 649[3, 4]; *State v. Stewart*, 596 S.W.2d 758, 760[8–10] (Mo.App. 1980).

■ In arguing venireman Sauer was biased and prejudiced, appellant points to venireman Sauer's uncertainty about whether she would be able to disregard her apprehension of being the victim of crime as she worked in her tavern late at night.

When venireman Sauer's testimony is considered in its entirety, her equivocation merely indicates her initial reluctance to guarantee her personal experiences would not influence her decision, that she could not definitely know whether they would influence her. When defense counsel began questioning venireman Sauer, she stated she did not believe her apprehension would affect her deliberation in appellant's case. Only upon defense counsel's continued questioning did the venireman equivocate, stating that she could not answer because she did not really know whether or not she would be affected. In response to the court's questioning, venireman Sauer assured the court she could follow the court's instructions and could base her decision upon the evidence received in court and not her experiences. The venireman also assured defense counsel she could unquestionably block out her personal apprehension from her deliberations upon the trial court's instruction.

■ All doubt concerning the determination of a venireman's qualifications should be resolved in favor of the trial court's ruling because the trial judge is in a far better position to observe the demeanor of the venireman and to evaluate and interpret the venireman's answers as they relate to whether the venireman could be fair and impartial if chosen as a juror. *State v. Thomas, supra; State v. Treadway, supra*, 649[1, 2]; *State v. Goodrich, supra; State v. Stewart, supra*, 760[8–10]. When considered in their entirety, venireman Sauer's responses to voir dire questions do not indicate any disqualifying bias or prejudice. *See State v. Treadway, supra*, 648–650. Further, any equivocation by venireman Sauer would have been cured by the venireman's rehabilitation when asked clarifying questions. *State v. Treadway, supra*, 649–650[3–4]; *State v. Goodrich, supra*, 83[2].

Appellant has placed reliance upon *State v. Lovell*, 506 S.W.2d 441, 443–444[1–4] (Mo. banc 1974). The case cited by appellant and *State v. Watson*, 595 S.W.2d 754, 756–758[1–4] (Mo.App.1980), hold that a venire-

**390**

man's opinion he could render a fair and impartial verdict would not rehabilitate a venireman who had clearly expressed doubt he could be a fair and impartial juror. Appellant's reliance on such reasoning is misplaced. Venireman Sauer did not clearly express her doubt she could be fair and impartial but equivocated under pressure by defense counsel. Additionally, the trial court's examination of venireman Sauer after defense counsel's challenge was more detailed than in *State v. Watson, supra,* and the venireman's rehabilitating responses more positive than in *State v. Lovell, supra.* The trial court's discretion was not abused.

The judgment is affirmed.

CRIST, P. J., and REINHARD, J., concur.