**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Joseph Manuel VIDAURI,**
**Defendant-Appellant.**

**No. 49130.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 6, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 17, 1985.

John F. Newsham, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

DOUGLAS W. GREENE, Special Judge.

Defendant, Joseph M. Vidauri, who had previously been convicted of the felonies of second degree burglary and assault with intent to rape, was jury-convicted of two counts of felony forcible rape, § 566.030,[1] and court-sentenced to 30 years' imprisonment on each charge, with the sentences to run consecutively.

Evidence presented sufficient to sustain the convictions was as follows. D.P., a lady of deep religious convictions, had known Vidauri for a number of years. They had attended church functions together and periodically engaged in religious discussions.

At approximately 10 p.m., on December 17, 1983, Vidauri came to D.P.'s home and knocked on her front door. When D.P. answered the door, Vidauri told her that he had been "in a meeting," and had missed his bus and needed a ride home. The victim agreed to drive him home, but Vidauri wanted to pray before they left, and asked D.P. to pray with him. The couple sat down on the couch, whereupon Vidauri "brought out" his Bible and began discussing some scripture.

After approximately 10 to 15 minutes, Vidauri produced "a long knife," and accused D.P. of "talking to people about him" and intending to report him to the police, presumably concerning an incident two months earlier in which he had sexually assaulted her. He then ordered D.P. to remove her clothing, which she did, and proceeded to rape and sodomize her a number of times. Two of the multiple rapes were the basis for the rape charges filed. Vidauri went to sleep after this incident. D.P. said she prayed for awhile, and then fell asleep. She called a church friend the next morning and told him what had happened. Her friend called the police, who came to D.P.'s home and arrested Vidauri.

The victim was taken to a hospital by the police where she was seen by a doctor and a "rape kit" was prepared. A vaginal smear examined by the St. Louis County Laboratory showed the presence of sperm in D.P.'s vaginal canal, while a test performed on one of the couch cushions was positive for seminal fluid. During a search of D.P.'s home, a knife bearing an inscription "Empire Steel Savoy" was found under a chair cushion in the living room near where the sexual assaults had taken place. The knife was identified by D.P. as "looks like" the one brandished by Vidauri. A subsequent search of the Morales home, where Vidauri frequently stayed, resulted in the discovery of a meat fork and a small steak knife bearing the same inscription as the knife found at the crime scene.

Vidauri's first contention on appeal is that the testimony of the complaining witness was so contrary to physical facts, surrounding circumstances and common

---

**1.** Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

experience that it was error not to require corroboration of her story.

■■■ This assertion was not raised in Vidauri's motion for new trial and therefore was not properly preserved for appeal. We are urged to review the point for plain error under Rule 29.12(b). In order to invoke the plain error rule, there must be a sound, substantial showing that manifest injustice, or a miscarriage of justice, will result if the rule is not invoked. *State v. Williams*, 637 S.W.2d 839, 841 (Mo.App. 1982). We do not find such a showing in the record.

■■■ Corroboration of the testimony of the complaining witness in a rape case is not mandated unless the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances, and common experience so that the validity of such testimony is rendered doubtful. Barring gross inconsistencies and contradictions, resolution of conflicts in evidence and determination of the credibility of witnesses are jury matters. *State v. Harris*, 620 S.W.2d 349, 353–354 (Mo. banc 1981).

As the basis for his argument, Vidauri claims that the following testimony by D.P. is contradictory, unconvincing, and is in conflict with physical facts, surrounding circumstances and common experience: (1) On direct examination, D.P. said Vidauri raped her four or five times, while in a deposition she said she did not have a "frame of reference" on the amount of penetration. (2) On direction examination, D.P. said she bit Vidauri during the struggle, but on cross-examination, she said that although she was resisting a great deal, she did not bite him. (3) D.P. discussed marriage with Vidauri on a prior occasion, did not report the prior or present assault to the police, kept letters Vidauri had written her, told Vidauri she loved him "with God's love," and did not call the police or attempt to flee during the incident, although she had the opportunity to do so.

■■■ These examples do not show conclusively that the testimony of D.P. was materially inconsistent or contradictory. While unusual in some respects, the testimony was properly scrutinized by the jury. They had a right to believe her, and did. Even if we would assume that her story needed corroboration, the discovery of the knife used by Vidauri to threaten D.P., plus the laboratory results showing the presence of sperm and semen, were adequate corroboration. This evidence is sufficient to sustain the convictions.

Vidauri next claims error in the trial court's overruling of defense counsel's objections to the closing argument of the prosecuting attorney. The argument in question came during rebuttal.

In Vidauri's closing argument his attorney stated:

Folks, I have a fear here. I have a fear that we have a lady, a poor lady who is very religious, has extremely strongly [sic] religious feelings; and at the same time has some sexual feelings.

I hate to dump that kind of an idea in front of you; and yet people do—you have a conflict; we all resolve our own conflicts in different ways. And I can give you evidence that this is a tremendous conflict here.

She begins speaking in tongues. What kind of a religious experience that is, I don't know. But I found that bizarre, strange behavior.

And then instead of going and dialing 911 on the phone or something, while Joseph is asleep on the couch, she sits and ponders all night long as to what has happened.

And then the police which bring her out; and she says, 'Well he has a knife and he raped me.'

And did he really? Was it really rape, or was it something that she put together in her mind to say, 'Well, I shouldn't have done it.'?

And you know, 'I can't have done that, I am a person. And since I can't have done that, he must have raped me, there must have been force and compulsion there, he must have forced me to do it.'

In rebuttal, to explain how D.P.'s devout religious beliefs were being twisted and used by Vidauri to his advantage, the prosecutor stated:

You saw [the victim] testify, and you know what she is. [D.P.] is and always will be a victim.

[The victim] has been a terminal victim. She's been victimized on account of her religious beliefs—

MR. WALKER: Your Honor, I object; that is not stated in the evidence.

THE COURT: Overruled.

MR. McCULLOCH: She has been victimized because she is as religious as she is; that she could not and would not turn anyone in to the police.

She has been victimized and will continue to be victimized, because of her background and her religion.

She was victimized once in October, taking advantage and preying upon her, and taking advantage of her religious convictions or beliefs.

Again in December, did the exact same thing. And he is doing it right here now right now; third time he is attempting to capitalize on [D.P.] and—

MR. WALKER: Your Honor, defendant has a right to a fair trial.

MR. McCULLOCH: Absolutely.

THE COURT: The objection will be overruled.

MR. McCULLOCH: And I couldn't agree with it more; defendant has had a fair trial.

. . . .

And remember the evidence in this case is uncontradicted and uncontroverted. He has had his fair trial, day in court; all he is attempting to do is put this case on the (victim).

. . . .

He can't get away . . . with it for the third time in this case.

Control of oral argument rests within the discretion of the trial court and will not be disturbed absent a showing of abuse of that discretion. *State v. Linder*, 613 S.W.2d 918, 926 (Mo.App.1981). We find no such abuse of discretion here.

It is proper in rebuttal, as here, to retaliate to an issue raised in defendant's closing argument, absent dialogue calculated to appeal to jury prejudice and passion. *State v. Wood*, 596 S.W.2d 394, 403 (Mo. banc), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). The point has no merit.

Finally, Vidauri argues that the trial court erred by admitting into evidence the steak knife and meat fork found in the Morales home. He contends that those articles were not in any way identified with him, or the crimes with which he was charged, and, therefore, their introduction into evidence was prejudicial.

Demonstrative evidence which tends to establish any fact and aids the jury in arriving at a correct verdict is admissible. *State v. Murphy*, 610 S.W.2d 382, 385 (Mo. App.1980). In seeking the introduction of the steak knife and meat fork into evidence, the prosecutor was attempting to show by inference that Vidauri brought the kitchen knife with him to the victim's apartment, as it matched the knife and fork found in the home where he regularly stayed. The exhibits were relevant to that purpose and were admissible. We find no error.

The judgments of conviction and sentences are affirmed.

DOWD, P.J., and KELLY, J., concur.