STATE of Missouri, Plaintiff/Appellant,

v.

Donald DUNN, Defendant/Respondent.

No. 62476.

Missouri Court of Appeals,
Eastern District,
Division One.

May 18, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 15, 1993.

Application to Transfer Denied
Aug. 17, 1993.

Allen E. Moss, Jr., Asst. Atty. Gen., Jackson, Jared R. Cone, Asst. Atty. Gen., St. Louis, for plaintiff/appellant.

Mary J. Lake, Almond, Williams & Brady, P.C., Hillsboro, for defendant/respondent.

REINHARD, Judge.

The State appeals the grant of defendant's motion for a judgment of acquittal notwithstanding the verdict of the jury on a charge of carrying a concealed weapon. We reverse and remand.

Defendant was charged with one count of first degree assault, § 565.050, RSMo 1986, and one count of unlawful use of a weapon (carrying a concealed weapon), § 571.030.1(1), RSMo 1986. Pursuant to instructions submitted at the State's request, the jury found defendant guilty of third degree assault and carrying a concealed weapon. The jury recommended sentences of thirty days on the assault conviction and three years' imprisonment and a fine, to be assessed by the court, on the concealed weapon charge.

Defendant moved for a judgment notwithstanding the verdict on both counts. The trial court denied the motion regarding the assault conviction but granted the mo-

tion on the concealed weapon charge.[1] This appeal followed.

The State's evidence reveals that on October 20, 1991, off-duty Missouri State Highway Patrol Corporal David Markham was driving west on Highway 34 in his 1989 Ford Mustang.[2] As Cpl. Markham approached an intersection, defendant rolled through a stop sign, pulled his car onto Highway 34, a two-lane highway, and proceeded west up a hill. Defendant's vehicle accelerated slowly and Cpl. Markham was forced to brake sharply to avoid a collision. Cpl. Markham honked his horn and followed the car for approximately two miles, accelerating to a top speed of 45 miles per hour.

Cpl. Markham passed defendant's vehicle; defendant was driving and was accompanied by his son Clinton, and another man, Derrick Floyd. After he had completed the pass and was approximately five car lengths ahead of defendant, Cpl. Markham reduced his speed to fifty miles per hour in conformity with the speed zone recommendation. The cars negotiated several curves and Cpl. Markham lost sight of defendant's vehicle.

Defendant accelerated and positioned his car within inches of Cpl. Markham's car. Cpl. Markham engaged his brake lights but did not reduce his speed. Defendant overtook Cpl. Markham's car and pulled alongside him. The cars traveled into a no passing zone; Cpl. Markham slowed his car and defendant abruptly reentered the westbound lane in front of Cpl. Markham. Defendant then braked drastically, forcing Cpl. Markham to swerve onto the shoulder to avoid a collision. Defendant maneuvered his vehicle onto the shoulder; the two cars came to a stop.

Defendant and his son exited the car and rushed toward Cpl. Markham. The two stood outside the car and looked in the window as Cpl. Markham removed his identification card and a .38 caliber revolver from the glove box. Cpl. Markham exited the car, held up his I.D. card and holstered weapon, and identified himself as a police officer. Defendant stated, "I don't give a f— who you are, I am going to kick your ass ... [b]ecause you honked at me." Defendant continued to shout and curse and repeated his threat. Fearing an attack, Cpl. Markham put his I.D. card and the gun into his pockets to free his hands. Defendant's son opened the trunk of the car; defendant blocked Cpl. Markham's view with his body. Clinton Dunn removed a twelve-gauge shotgun from the trunk of the car and pointed it at Cpl. Markham's midsection. When Cpl. Markham told him to put the gun away, Clinton Dunn threatened to kill him.

Defendant took a swing at Cpl. Markham, grazing the officer's chin with his right fist. Defendant advanced toward Cpl. Markham and repeated his challenge to fight, adding, "If you don't fight me, or get the f— out of here, I'm going to make sure you don't leave here." Cpl. Markham retreated, raised his hands, and stated, "I'm not going to fight you. This is not worth it, I'm leaving."

Cpl. Markham returned to his car, started it, and backed up about fifteen feet. The Dunns walked back to their car; Clinton Dunn returned the shotgun to the trunk. The two then turned and prepared to get in their car. Cpl. Markham observed defendant remove a long-barreled pistol from his pants near the small of his back. Cpl. Markham[3] testified he had been looking at defendant's back as he returned to the car but had not seen any part of the gun prior to the time defendant pulled it by the grip from the back of his pants.[4] How-

---

1. Defendant's assault conviction was affirmed by this court in *State v. Dunn,* 852 S.W.2d 157 (Mo.App.1993).

2. This automobile was Cpl. Markham's personal car and was evidently unmarked.

3. Cpl. Markham was promoted to the rank of Sergeant sometime prior to trial.

4. Cpl. Markham offered the following testimony at trial:

> [Prosecutor]: Describe what you saw then after you got done backing up.
> [Cpl. Markham]: After I backed up and got stopped, [defendant] turned around. Clint— or, [defendant] was watching me while Clint put the shotgun back in the trunk. They both

ever, Sergeant John Norman, the Highway Patrol officer who investigated the incident, testified that he had interviewed Cpl. Markham on the evening of the altercation and stated that Cpl. Markham told him at that time that "he saw the gun in the back of [defendant's] pants when he turned and walked to his car."

Defendant testified that his son had retrieved the pistol from the car's trunk and handed it to him after the altercation had begun. Defendant stated, "I just stuck the pistol down in my belt. The whole barrel and the handle, everything was showing." He stated that the gun was not "stuck down in [his] pants," and demonstrated to the jury how he had placed the gun in his belt. He stated that he had never shown the gun to the officer but insisted that Cpl. Markham must have seen it. When asked, "[D]id you want him to know that you had that pistol?", defendant responded, "No, I didn't even want no guns involved."

Derrick Floyd testified that he remained in defendant's car during the incident but that he saw Clinton Dunn hand his father the gun and defendant put it in his pants. Floyd stated that the grip of the gun was visible, but not the barrel.

On appeal, the State contends that the trial court improperly granted defendant's motion for a judgment not withstanding the verdict, in that the judge "erroneously reviewed the weight of the evidence and the credibility of Trooper Markham as a witness, which were solely matters for the jury as trier of fact."

A person commits the crime of unlawful use of a weapon if he knowingly carries a firearm concealed upon his person. Section 571.030.1(1). Our supreme court recently reiterated the applicable standard by which to determine concealment:

> The test of concealment is whether a weapon is so carried as not to be discernible by ordinary observation. *[State v.] Bordeaux*, 337 S.W.2d [47,] 49 [Mo.1960]. When the weapon is not fully covered or enclosed, the court of appeals has formulated the test as follows:
>
> > [A] weapon is not concealed simply because it is not discernible from a single vantage point if it is clearly discernible from other positions. It may be concealed, however, where it is discernible only from one particular vantage point.
>
> *State v. Cavin*, 555 S.W.2d 653, 654 (Mo. App.1977), *citing State v. Miles*, 124 Mo. App. 283, 101 S.W. 671, 672 (Mo.App. 1907).

*State v. Purlee*, 839 S.W.2d 584, 590 (Mo. banc 1992).

■ To determine whether to grant defendant's motion for judgment of acquittal notwithstanding the jury's verdict, the trial court was required to view the evidence and inferences drawn therefrom in the light most favorable to the verdict, disregarding all contrary evidence and inferences. *State v. Davis*, 824 S.W.2d 936, 937

---

turned around in unison and started walking up to their respective sides of the car.

[Prosecutor]: Could you see ... defendant's back that time?

[Cpl. Markham]: Yes I did.

[Prosecutor]: Did you notice anything unusual about it?

[Cpl. Markham]: I didn't notice anything until I saw his hand reach—his right hand reached around his back and he pulled a long barreled pistol out of his—the small of his back that had been stuck in his pants.

[Prosecutor]: When did you first see that pistol?

[Cpl. Markham]: Right when he brought it out of his pants.

[Prosecutor]: Were you looking at his back before he pulled the pistol out?

[Cpl. Markham]: Yes, I did.

[Prosecutor]: Did you see any part of a pistol in his pants at that time?

[Cpl. Markham]: No, I didn't.

\* \* \* \* \* \*

[Prosecutor]: How far away from him were you when you saw this pistol for the first time?

[Cpl. Markham]: Probably 20 feet. Twenty-five feet maybe.

[Prosecutor]: Had you at any time seen the pistol prior to that moment.

[Cpl. Markham]: No, sir, I had not.

[Prosecutor]: Did the defendant ... tell you or in any way indicate to you that he had a pistol, during this altercation, stuck in his pants?

[Cpl. Markham]: No, sir.

[Prosecutor]: Your answer?

[Cpl. Markham]: No, he didn't. I had no idea he had that gun until he brought it out of his pants.

(Mo.App.1992). With the evidence so viewed, the trial court was then required to determine whether the evidence was sufficient for twelve reasonable persons to have found defendant guilty as charged beyond a reasonable doubt. *Id.*

> Questions of credibility of witnesses and the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury. It is within the jury's province to believe all, some, or none of any witness's testimony in arriving at its verdict. The testimony of one witness may be sufficient to sustain a conviction, even if the testimony is inconsistent.

*Id.* at 941 (citations omitted). Furthermore, "[a] police officer's testimony that he did not see a pistol despite the opportunity to view the accused under conditions likely to cause a police officer to be particularly observant for weapons is entitled to some consideration both at the trial and appellate levels." *State v. Murphy,* 610 S.W.2d 382, 384 (Mo.App.1980).

■ Here, defendant admits that he placed the gun in his belt in the small of his back, but contends that the gun was not concealed, within the meaning of the statute. Defendant produced a witness who testified that from his vantage point he could see the gun in defendant's waistband; however, the testimony of defendant and this witness conflict regarding what portion of the gun was visible. Additionally, although defendant asserts that the officer must have seen the handgun, he admits that he did not intend for him to see it and that he never exhibited the weapon in such a manner as to ensure that Cpl. Markham saw it.

Conversely, Cpl. Markham testified that he had an opportunity to observe defendant's hands and his body from the front and rear and did not notice the pistol until defendant removed it from his pants as he prepared to leave the scene. *See Cavin,* 555 S.W.2d at 654. Here, as in *Cavin,* we take into account, as the jury could, that the circumstances under which the incident occurred were such as to cause Cpl. Mark-

ham, a trained law enforcement officer, to be particularly observant for weapons. *Id.*

Furthermore, defendant demonstrated at trial how the pistol would appear when placed in his pants. The jury evidently believed it was possible for defendant's pistol to be concealed in this way. *See Murphy,* 610 S.W.2d at 385. The jury was free to disbelieve the defense witnesses and solely believe Cpl. Markham's sworn testimony. The inconsistency between Cpl. Markham's testimony and his reported statement to Sgt. Norman was similarly for the jury to resolve. *See State v. Williamson,* 809 S.W.2d 16, 19 (Mo.App.1991). The officer's testimony was sufficient to sustain a conviction; the trial judge erred in granting defendant's motion for judgment of acquittal not withstanding the verdict.

■ In his brief, defendant contends that if the trial court is reversed on the State's appeal, he should be granted a new trial because of the trial court's erroneous submission of a verdict director. Defendant asserts that the court improperly submitted to the jury Instruction No. 7, the verdict director on the concealed weapons charge, patterned after MAI–CR3d 331.20, as modified by MAI–CR3d 304.02. Defendant contends that this instruction "improperly states Missouri law because it requires jury find only that the weapon was carried so that 'it was concealed from ordinary observation' and does not allow consideration that the weapon may be unobservable from one vantage point but clearly observable from other vantage points."

"The MAI–CR3d approved instructions are mandatory and we are prohibited from declaring that an instruction so adopted by the Supreme Court is erroneous." *State v. Smith,* 806 S.W.2d 119, 121 (Mo.App.1991); Rule 28.02(c). The challenged instruction tracks the well-established test of concealment formulated by Missouri courts. The instruction neither "improperly states Missouri law" nor prohibits a jury's consideration of a weapon's observability from other vantage points. Defendant's point is without merit.

Judgment reversed and remanded. Upon remand the trial court is instructed to

reinstate the conviction of defendant for carrying a concealed weapon and sentence him.

AHRENS, P.J., and CRIST, J., concur.